UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STARBUCKS CORPORATION,

        Plaintiff,

v.

WELLSHIRE FARMS, INC.,

        Defendant.

CASE NO. C13-1170-MJP

ORDER GRANTING MOTION TO DISMISS

This matter comes before the Court on the motion of Defendant Hahn Bros. Inc. to dismiss for lack of personal jurisdiction. (Dkt. No. 24.) Having reviewed the motion, the responses (Dkt. No. 28-29), Hahn's reply (Dkt. No. 32), and all related papers, the Court finds it lacks personal jurisdiction over Hahn and GRANTS the motion.

**Background**

Hahn is a Maryland-based corporation specializing in the processing and packaging of meat products. (Dkt. No. 1 at 2.) Its processing of ham for use in Starbucks' sandwiches is the subject of this lawsuit. (Id. at 4.)

This case begins with Starbuck's decision to introduce new warm breakfast sandwiches to its stores nation-wide in 2008. (Id. at 1) To those ends, Starbucks provided non-party SK Food Group ("SK Food") with specifications for the new sandwiches. (Id. at 2-3) SK Food is a food assembler, who sourced the ingredients for the new sandwiches, and produced several sandwich options for Starbucks' consideration in blind taste-tests. (Id.) Starbucks selected a ham sandwich with Black Forest ham it believed to be produced by Wellshire Farms, Inc., another defendant in this case. (Id. at 3)

Starbucks also decided to redesign its chilled lunch sandwiches and followed a similar process for choosing a new sandwich: SK Food provided options and Starbucks again choose a sandwich it believed to have Wellshire Farms' Black Forest ham. (Id. at 3) In reality, the ham was processed by Hahn. (Dkt. Nos. 25 at 2, 26 at 2-3.) Starbucks did not have a contract with either Hahn or Wellshire. Instead, Starbucks contracted with the sandwich assemblers, who then contracted with Wellshire, a meat vendor. Only Wellshire contracted with Hahn.

Shortly after the sandwich redesign, Starbucks received customer complaints about spoiled ham. (Dkt. No. 1 at 3.) Starbucks issued "Stop Sell and Discard" notices to its stores. (Id. at 3-4.) Starbucks alleges that only after a second round of complaints and an investigation, did it learn that Hahn—not Wellshire—had actually produced the ham. (Id. at 4.) Starbucks issued a second, followed by a third "Stop Sell and Discard" notice to its stores. (Id.) After these problems persisted, Starbucks suspended its sales of the sandwiches. (Id. at 5.)

Starbucks' settled with the sandwich assemblers for losses they suffered from the alleged defective ham. (Id. at 5-6) In return, the assemblers assigned their rights to bring claims against Hahn and Wellshire to Starbucks. (Id.)

Asserting the sandwich assemblers' assigned rights, Starbucks sues Hahn and Wellshire for breach of implied warranty of fitness for a particular purpose under RCW 62A.2-315, breach of contract on a third-party beneficiary rights theory, negligence, and a claim of violation of Washington's Consumer Protection Act. (Id. at 6-11.) Starbucks claims at least $4.8 million in damages and attorney fees. (Id. at 11.)

Hahn now moves to dismiss for lack of personal jurisdiction. Hahn argues: (1) general jurisdiction does not exist, because it conducts no business in the state nor has a physical presence in Washington; (2) specific jurisdiction does not exist because it has not purposefully availed itself of the forum, and jurisdiction offends notions of fair play and substantial justice. (Dkt. No. 24 at 10-16.) Indeed, the record shows Hahn has no offices, stores, outlets, distributors, warehouses, or employees within Washington, nor does it have substantial sales of ham or other products here. (Dkt. Nos. 25, 26.)

Starbucks counters that specific jurisdiction exists because Hahn has placed defective products into the stream of commerce, caused economic losses to Starbucks in Washington state, and compelled production of documents from the Starbucks corporation for use in other litigation. (Dkt. No. 29 at 8-15.)

**Discussion**

  A. Legal Standard

As Plaintiff, Starbucks bears the burden of establishing that the court has personal jurisdiction. See, e.g., Zigler v. Indian River Cnty., 64 F.3d 470, 473 (9th Cir. 1995). Because the court is resolving the motion to dismiss without holding an evidentiary hearing, Starbucks "need make only a prima facie showing of jurisdictional facts to withstand the motion." Wash. Shoe Co. v. A–Z Sporting Goods, Inc., 704 F.3d 668, 671–72 (9th Cir. 2012). That is, Starbucks

need only demonstrate facts that if true would support jurisdiction over [Hahn]. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1085 (9th Cir. 2000) ("Where ... the district court does not hold an evidentiary hearing but rather decides the jurisdictional issue on the basis of the pleadings and supporting declarations, we will presume that the facts set forth therein can be proven."). Neither party has requested an evidentiary hearing.

In addition to Starbuck's complaint, the parties have submitted affidavits both in support of and in opposition to the motion. (Dkt. Nos. 25-26, 30, 33-34.) In determining whether Starbucks has met its burden of making a prima facie showing of jurisdictional facts, the court considers uncontroverted allegations in Starbuck's complaint as true and resolves conflicts between facts contained in the parties' affidavits in Starbuck's favor. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

Because there is no federal statute governing personal jurisdiction in this case, Washington's long-arm statute applies. Wash. Shoe, 704 F.3d at 672. That statute extends jurisdiction over a defendant to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. Id. Because Washington's long-arm statute is coextensive with federal due process, the state-law jurisdictional analysis is the same as the federal due process analysis. AT & T Co., 94 F.3d at 588. "The relevant question, therefore, is whether the requirements of due process are satisfied by the exercise of personal jurisdiction over [Hahn] in Washington." Id. Federal due process requires that a defendant have sufficient minimum contacts with the forum state that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

There are two different kinds of personal jurisdiction: general and specific. Starbucks does not argue this Court has general personal jurisdiction over Hahn. With that concession, the

Court only addresses specific jurisdiction. The Ninth Circuit employs a three-part test to determine whether a court has specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). Starbucks bears the burden of alleging the first two prongs of the test. If successful, Hahn then bears the burden of showing that an exercise of jurisdiction would not be reasonable. See College Source, Inc. v. Academy One, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011).

        B.      No Specific Jurisdiction

Starbucks has not alleged facts that would establish Hahn purposefully directed activities to the residents of Washington sufficient to support the claims plead here. Starbucks raises three arguments for personal jurisdiction. None are persuasive.

        1.      Stream of Commerce

Starbucks alleges Hahn's placement of a defective product into the stream of commerce with the knowledge it would be used in Starbucks' sandwiches is sufficient contact for specific jurisdiction. (Dkt. No. 23 at 15.) The Court rejects this argument because it ignores the well-established rule that a defendant's mere awareness a product will be placed in the stream of commerce and may reach the forum state is insufficient for the exercise of specific jurisdiction. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987). Although a majority of the Supreme Court has yet to agree on the exact requirements for the application of the stream of commerce theory, a plurality stated that a company must do more than just place a product in the

stream of commerce; it must purposefully direct some action toward the forum state. J. McIntyre Machinery, Ltd. v. Nicastro, ––– U.S. ––––, ––––, 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765 (2011). Examples of affirmative or additional conduct that " 'may indicate an intent or purpose to serve the market in the forum State include marketing the product through a distributor who has agreed to serve as the sales agent in the forum State, and designing the product for the market in the forum State." Bou–Matic, L.L. C. v. Ollimac Dairy, Inc., 2006 WL 658602, *4 (E.D.Cal. 2006) (citing Asahi, 480 U.S. at 112–13 and Tobin v. Astra Pharm. Prods., Inc., 993 F.2d 528, 544 (6th Cir. 1993) ("something more" requirement of Asahi plurality satisfied where defendant sought and obtained a distributor to market its product in each and every state); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 n. 15 (presence of established distribution channel is a significant factor in cases involving stream of commerce theory).

In the present case, Starbucks fails to show Hahn engaged in additional conduct necessary for this Court to exercise jurisdiction. Hahn did not attempt to serve the market in Washington, market itself here, or otherwise direct its upstream commerce to this district. Hahn's singular act of making ham is too attenuated for specific jurisdiction to exist. Furthermore, Hahn's only act that tips towards finding additional conduct (sending ham samples) was done not at its own initiative, but at the direction and payment of a customer, Wellshire. (Dkt. No. 34 at 5.) Hahn had no control over any aspect of the ham's distribution after it left the Maryland facility with Wellshire's packaging and imprint. (Id.) The Court does not find the act of producing ham that is later distributed and controlled by third parties, as purposefully availing itself of the benefits of this forum.

    2. Effect on Washington

Starbucks also theorizes that Hahn is subject to this Court's jurisdiction because "the loss suffered by Starbucks Corporation as a result of Hahn's defective ham is felt by Starbucks'…home state of Washington." (Dkt. No. 29 at 14.) It contends that for jurisdictional purposes, a corporation incurs economic loss in the forum of its principle place of business. (Id. at 14-15.) This argument mischaracterizes the law in this Circuit. If Starbucks alleged intentional torts against Hahn, then indeed, this Court would apply the effects test articulated in Calder v. Jones, 465 U.S. 783 (1984), and would ask (1) if Hahn committed an intentional act, (2) if that tort was expressly aimed at the forum state, (3) and if it caused harm that it knew was likely to be suffered in the forum state. See e.g. Dole v. Watts, 303 F.3d 1104-1113-14 (9th Cir. 2002), Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487 (9th Cir. 1993), Panavision Int'l v. L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998). That is not the situation presented here: Starbucks does not allege Hahn committed an intentional tort. Rather, against Hahn, Starbucks alleges breach of contract and negligence. Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d 450, 460 (9th Cir. 2007) ("it is well established that the Calder test applies only to intentional torts, not to the breach of contract and negligence claims.") Therefore, the effects test has no application here. See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006). The losses in Washington are not a basis for specific jurisdiction.

### 3. Subpoenas

Starbucks suggests Hahn subjected itself to the Court's jurisdiction by subpoenaing records from Starbucks for use in a case in New Jersey. (Dkt. No. 29 at 15.) The Court turns to the second part of the specific jurisdiction test because even if Hahn engaged in civil discovery, it fails to show its claims arise from that contact. The arising out of requirement is met if "but for" the contacts between the defendant and the forum state, the cause of action would not have

arisen. Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997). Here, there is no "but for" relationship between the subpoenas sought by Hahn and Starbucks' claims here. Starbucks' factual allegations supporting the claims asserted in this case occurred well before Hahn's 2011 subpoena requests. Accordingly, Starbucks has not satisfied its burden as to the second prong for specific jurisdiction.

In sum, the Court lacks specific jurisdiction over Hahn because it did not direct its activities to this forum and Starbucks' claims do not arise from Hahn's limited contact with the state. Having determined Hahn did not purposefully avail itself to Washington or that its contacts with Washington are too attenuated for specific jurisdiction to exist, the Court GRANTS the motion.

In deciding this matter on the record before it, the Court DENIES Starbucks' request for time to conduct jurisdictional discovery. Leave to take jurisdictional discovery should be permitted when "pertinent facts bearing on the question of jurisdiction are in dispute." or where a more satisfactory showing of the facts is necessary. Am. W. Airlines, Inc. v. GPA Grp., Ltd., 877 F.2d 793, 801 (9th Cir. 1989) (citing Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430–31 n. 24 (9th Cir. 1977)). In the present case, Starbucks does not identify any factual dispute requiring discovery. Nor does there appear to be a reasonable likelihood additional facts may be uncovered to support jurisdiction. Starbucks lists possible topics that could be discovered; but other than its own suspicsions, it fails to show discovery is likely to lead to such evidence. The Court DENIES the request.

//

//

//

**Conclusion**

Because Defendants do not have minimum contacts with this District, this Court does not have personal jurisdiction over Defendants. The motion is GRANTED. (Dkt. No. 24.) The clerk is ordered to provide copies of this order to all counsel.

Dated this 17th day of December, 2013.

Marsha J. Pechman
Chief United States District Judge