**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STARBUCKS CORPORATION,  Plaintiff,  v.  WELLSHIRE FARMS, INC., and HAHN BROS., INC.,  Defendants.  WELLSHIRE FARMS, INC.,  Third-Party Plaintiff,  v.  SK FOOD GROUP, INC.,  Third-Party Defendant. | Civil No. 14-0041 (NLH/AMD)  **OPINION** |

**APPEARANCES**:

JUDITH BOND JENNISON
JAMES F. WILLIAMS (pro hac vice)
J. CAMILLE FISHER (pro hac vice)
PERKINS COIE LLP
1201 THIRD AVENUE
SUITE 4900
SEATTLE, WA 98101
    On behalf of Starbucks Corporation

CATHERINE JEAN BICK
JAMES MURDOCK ANDREWS
MATTHEW N. FIOROVANTI
GIORDANO HALLERAN & CIESLA, P.C.
125 HALF MILE ROAD
SUITE 300
RED BANK, NJ 07701
    On behalf of Wellshire Farms, Inc.

MARGARET F. CATALANO
TIMOTHY BOYD PARLIN
HEATHER R. BEYGO (pro hac vice)
KIMBERLY L. LIMBRICK (pro hac vice)
CAROLL, MCNULTY & KULL, LLC
120 MOUNTAIN VIEW BOULEVARD
PO BOX 650
BASKING RIDGE, NJ 07920
    On behalf of Hahn Bros., Inc.

VALERIE A. HAMILTON
SILLS CUMMIS & GROSS, P.C.
600 COLLEGE ROAD EAST
PRINCETON, NJ 08540
    On behalf of SK Food Group, Inc.

**HILLMAN, District Judge**

This case concerns the quality of ham in breakfast and lunch sandwiches sold at plaintiff Starbucks Corporation locations throughout the United States and Canada. Presently before the Court is the motion of defendant Hahn Brothers, Inc. to dismiss the claims against it asserted by Starbucks. Starbucks has opposed Hahn's motion, and so has defendant Wellshire Farms, Inc. For the reasons expressed below, Hahn's motion will be denied without prejudice.

## BACKGROUND

According to Starbucks's first amended complaint, in 2007, Starbucks entered into a contract with third-party defendant SK Food Group, Inc., in which SK Food agreed to assemble, package, and deliver warm breakfast ham sandwiches to Starbucks locations in the western United States and Canada. In 2008, Starbucks changed its breakfast sandwich program, and provided SK Food

2

with new specifications for its ham sandwiches. After SK Food conducted a blind taste test that resulted in Starbucks selecting what it thought was Wellshire Farms Black Forest ham, Starbucks hired SK Food and other sandwich assembly companies to use Wellshire ham in making warm and cold ham sandwiches for distribution to Starbucks stores throughout the United States and Canada.

In September 2010, Starbucks started getting customer complaints about the ham in Starbucks sandwiches. Customers complained that the ham was discolored, had an unusual taste, and appeared spoiled. Starbucks informed Wellshire of the complaints, and in October 2010, Starbucks issued "Stop Sell and Discard" notices for the warm breakfast sandwiches. Starbucks also investigated, discovered quality issues with the ham being provided from Wellshire, and issued a "Corrective Action Plan" to SK Food.

In November 2010, Starbucks continued to receive complaints about the ham from customers around the United States. Starbucks claims that when it began to search for a new ham supplier, Wellshire pleaded with Starbucks to maintain its supplier relationship. Starbucks then learned for the first time that Hahn, and not Wellshire, was actually producing the ham. Starbucks claims that Wellshire had entered into an agreement with Hahn to satisfy its obligation to produce Black

Forest ham for Starbucks sandwiches.

In December 2010, Starbucks had laboratory tests performed on the ham, and the test results revealed that a sample contained potentially harmful bacteria. On December 10, 2010, Starbucks issued a second "Stop Sell and Discard" notice for its ham sandwiches. On December 18, 2010, SK Food notified Starbucks that it would no longer use Wellshire's ham for the sandwiches. Two days later, a third-party audit revealed deficiencies in the way Hahn cooked and processed the ham. On December 21, 2010, Starbucks issued its final "Stop Sell and Discard" notice for all ham sandwiches, and on December 23, 2010, Starbucks ordered all sandwich assemblers to stop making sandwiches using Wellshire ham.

According to Starbucks' complaint, in order to minimize the financial impact of Starbucks' decision to cease the production of ham sandwiches, Starbucks entered into a settlement agreement with the ham sandwich assemblers to compensate them for their losses. In return, the ham sandwich assemblers assigned their rights to Starbucks to bring claims against Wellshire and Hahn for their losses.

Accordingly, Starbucks has asserted claims against Wellshire for beach of the implied warranty of merchantability (Count One) and breach of the implied warranty of fitness for particular purpose (Count Two), both under the UCC. Also

4

against Wellshire, Starbucks has asserted claims for negligent misrepresentation (Count Six) and unfair and deceptive trade practices (Count Seven).  Starbucks has asserted claims against both Wellshire and Hahn for breach of the ham sandwich assembler agreements and Starbucks' third-party beneficiary rights (Counts Three and Four), as well as a claim for negligence (Count Five).

Hahn has moved to dismiss Starbucks' claims against it, arguing that Starbucks' claims are barred by the three-year statutes of limitations provided under Maryland law.  Starbucks, as well as Wellshire,[1] have opposed Hahn's motion, arguing primarily that the determination of what state's law to apply to the case is a fact-based analysis that is premature at this motion to dismiss stage, where the proper law to apply is not readily apparent from the face of the complaint.

## DISCUSSION

**A.   Standard for Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds

---

[1] According to the parties' papers, in 2011, Wellshire filed suit in the District of New Jersey against Hahn and SK Food regarding the Starbucks ham sandwich issues.  The parties settled their claims.  Even though Wellshire has not asserted any cross-claims against Hahn in this case, Wellshire has opposed Hahn's motion to dismiss because Wellshire contends that it is directly impacted by Hahn's motion due to Starbucks' conflated claims against Wellshire and Hahn.

5

$75,000.

**B.     Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

6

claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").  Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability

7

requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

8

## C. Analysis

Hahn argues that it is clear from the face of Starbucks' complaint that Maryland has the most significant relationship to Starbucks' claims against Hahn, and therefore Maryland's three-year statutes of limitations for negligence-to-property and contract claims apply, rather than New Jersey's six-year statutes of limitations for those claims.[2]  Because the three-year statutes of limitations apply, and Starbucks did not file its claims against Hahn until after the expiration of the three-year limitations period, Starbucks' claims against Hahn must be dismissed.

In order to come to this conclusion, Hahn follows New Jersey's "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws, which is applicable in this Court as a federal court sitting in diversity.  See Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 379 (3d Cir. 1992) (explaining that federal courts sitting in diversity apply the forum state's choice-of-law rules); P.V. v. Camp Jaycee, 962 A.2d 453, 459-60 (N.J. 2008) (setting forth New Jersey's choice of law principles).  This test requires the Court to determine whether an actual conflict exists between the

---

[2] Hahn also points out that Washington's statute of limitations is six years for contact claims, and three years for property damage-based negligence claims.

laws of the competing states and, if so, to determine which state has the most significant relationship to the parties and cause of action. Camp Jaycee, 962 A.2d at 460.

In this case, Hahn contends that an actual conflict exists between the various states' statutes of limitations, and that Maryland's statute of limitations should apply because Maryland has the most significant relationship to Starbucks' purported third-party beneficiary rights to the contract between Hahn and Wellshire. Hahn contends that everything related to the allegedly defective ham, as pleaded in Starbucks' complaint with regard to processing and testing, occurred in Maryland. Therefore, Hahn argues that Maryland law must apply to Starbucks' breach of contract of its third-party beneficiary rights and negligence claims. Since the alleged customer complaints began in September 2010, the three year statute of limitations expired in September 2013. Because Starbucks did not institute this action against Hahn until February 2014, Hahn argues that Starbucks' claims against it are time-barred.[3]

---

[3] In its opposition to Hahn's motion, Starbucks explains the procedural history of this case. On July 5, 2013, Starbucks filed suit against Wellshire and Hahn in the Western District of Washington. On December 17, 2013, the Western District of Washington granted Hahn's motion to dismiss for lack of personal jurisdiction, and on December 18, 2013, the case was transferred to this Court pursuant to Wellshire's motion to transfer. Once the case was in this Court, on February 11, 2014, Starbucks filed a first amended complaint, which re-added Hahn as a defendant. Starbucks argues that even if Maryland law were to

A statute of limitations defense is not included in the enumerated defenses listed in Federal Civil Procedure Rule 12(b), but the Third Circuit has instructed that a statute of limitations defense may be raised in a Rule 12(b)(6) motion to dismiss where it is clear on the face of complaint that the action is not brought within the statute of limitations. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). In determining whether an action should be dismissed for non-compliance with a statute of limitations, the Third Circuit has cautioned that "[if] the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quotation omitted). Consequently, in resolving Hahn's motion, this Court must determine whether the face of Starbucks' complaint reveals that Maryland has the most significant relationship with the claims and parties in this case.

Sections 6, 145 and 188 of the Restatement (Second) of Conflicts of Laws, adopted by New Jersey for contract and

---

apply to its claims against Hahn, its first amended complaint would relate back to its original complaint, which was filed before the expiration of the three year limitation period. Starbucks also argues that the UCC contains a 4-year limitations period that applies instead of state law statutes of limitations. The Court does not need to address these arguments at this time.

negligence claims, direct the Court to consider:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> [and]
>
> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Forestal Guarani S.A. v. Daros Intern., Inc., 613 F.3d 395, 400-401 (3d Cir. 2010) (citing Restatement (Second) of Conflicts of Laws § 188(2) § 6(2) (1971)); see also Pollard v. AEG Live, LLC, 2014 WL 4637017, 3 (D.N.J. 2014) (citing Restatement (Second) of Conflict of Laws § 145(1) (1971)) (explaining that when presented with a tort claim, the applicable Second Restatement section is 145, which simply refers the Court back to the principles of section 6 to determine the state with the "most significant relationship to the occurrence and the parties").

That Maryland law should apply to Starbucks' claims against Hahn cannot be determined from the face of Starbucks' complaint. As recited above, Starbucks claims that its damages from the defective ham sandwich program were caused by Wellshire's

12

clandestine assignment of its ham processing to Hahn to fulfill Wellshire's obligation to supply ham to Starbucks' ham sandwich assemblers.  Even though the complaint states that Hahn is a Maryland corporation with a principal place of business in Maryland, the complaint is otherwise silent as to the location of all other events, except for the country-wide distribution of the ham to sandwich assemblers, and the sandwiches' shipment to Starbucks locations throughout the United States and Canada. There are no allegations concerning the details of the contract between Wellshire, a New Jersey company, and Hahn, or where the ham was processed or shipped from.  Although it could be guessed that Hahn's principal place of business in Westminster, Maryland was where the ham was produced and where Starbucks eventually tested it on-site, the complaint does not specify the location or any other details about Wellshire and Hahn's business dealings.

    Moreover, even if Maryland was the location of the ham production, it is the relationship between New Jersey-based Wellshire and Hahn that forms the basis of Starbucks' claims. What law applies to the contractual relationship between Wellshire and Hahn is not stated in Starbucks' complaint, and it cannot be determined from the complaint.  It is based on that contract between Wellshire and Hahn that Starbucks is claiming a third-party beneficiary interest.  Additionally, it is Wellshire

13

and Hahn's collective "breach of their duties by providing defective ham from an unknown, unreliable, and potentially unsafe ham supply source" that forms the basis for Starbucks' negligence claims. Starbucks' complaint does not make it clear that Maryland has the most significant relationship to the events in this case so that Maryland's statutes of limitations bars Starbucks' claims.

Consequently, a record more robust – as Plaintiff puts it – than simply Starbucks' complaint is necessary before the Court can determine what state's law applies to Starbucks' claims against Hahn. Hahn's motion will be denied without prejudice to its right to raise the issue again should it determine the appropriate time to do so.

An accompanying Order will be entered.

At Camden, New Jersey

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.