```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY


 _____
                                │
  STARBUCKS CORPORATION,        │
                                │  Civil No. 14-0041 (NLH/AMD)
         Plaintiff,             │
                                │
      v.                        │  OPINION
                                │
  WELLSHIRE FARMS, INC., and    │
  HAHN BROTHERS, INC.,          │
                                │
         Defendants.            │
                                │
                                │
  WELLSHIRE FARMS, INC. and     │
  HAHN BROTHERS, INC.,          │
                                │
         Third-Party Plaintiffs,│
                                │
      v.                        │
                                │
  SK FOOD GROUP, INC.,          │
                                │
         Third-Party Defendant. │
 _____ │
```

**APPEARANCES**:

JUDITH BOND JENNISON
JAMES F. WILLIAMS (pro hac vice)
J. CAMILLE FISHER (pro hac vice)
PERKINS COIE LLP
1201 THIRD AVENUE
SUITE 4900
SEATTLE, WA 98101
    On behalf of Starbucks Corporation

CATHERINE JEAN BICK
JAMES MURDOCK ANDREWS
MATTHEW N. FIOROVANTI
GIORDANO HALLERAN & CIESLA, P.C.
125 HALF MILE ROAD
SUITE 300
RED BANK, NJ 07701
    On behalf of Wellshire Farms, Inc.

MARGARET F. CATALANO
TIMOTHY BOYD PARLIN
CAROLL, MCNULTY & KULL, LLC
120 MOUNTAIN VIEW BOULEVARD
PO BOX 650
BASKING RIDGE, NJ 07920

HEATHER R. BEYGO (pro hac vice)
MARY MALLOY DIMAIO (pro hac vice)
CROSSWHITE, LIMBRICK & SINCLAIR, LLP
25 HOOKS LANE, SUITE 310
BALTIMORE, MD 21208
      On behalf of Hahn Brothers, Inc.

GEORGE R. HIRSCH
VALERIE A. HAMILTON
SILLS CUMMIS & GROSS, P.C.
ONE RIVERFRONT PLAZA
NEWARK, NJ 07102

ROBERT J. CURRAN (pro hac vice)
JAMES M. SHAKER (pro hac vice)
TERUYUKI S. OLSEN (pro hac vice)
RYAN, SWANSON & CLEVELAND, PLLC
1201 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101-3034
      On behalf of SK Food Group, Inc.

**HILLMAN, District Judge**

This case concerns the quality of ham in sandwiches sold at plaintiff Starbucks Corporation ("Starbucks") locations throughout the United States and Canada.[1] Presently before the Court is the motion of third-party defendant SK Food Group, Inc. ("SK Food") to dismiss the claims against it asserted by

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

defendants/third-party plaintiffs Wellshire Farms, Inc. ("Wellshire") and Hahn Brothers, Inc. ("Hahn").[2] For the reasons expressed below, SK Food's motion to dismiss will be denied.

## BACKGROUND

According to Starbucks' complaint, in 2007 Starbucks entered into a contract with SK Food, in which SK Food agreed to

---

[2] SK Food had previously moved to dismiss the third-party complaint of Wellshire, but the Court denied that motion without prejudice because both the settlement agreement, the parties' briefs, and Wellshire's complaint were all filed under seal or filed with significant redactions. The Court directed that the parties were "encouraged to propose a less restrictive alternative to the current redactions that would allow the Court to balance the parties' desire for confidentiality of their private agreement with the right of the public to access judicial proceedings and records." (Docket No. 154 at 8.) Since that time, the third-party complaints have been filed unredacted. (Docket Nos. 171, 172.) In conjunction with its motion to dismiss, SK Food has moved to unseal all documents that have been sealed by Wellshire and Hahn. (Docket No. 204.) Wellshire argues that only the portions of the parties' settlement that require review by the Court in assessing SK Food's motion should be unsealed. Hahn argues that no documents should be unsealed, and to the extent that the Court needs to consider the sealed documents, the Court should review the documents *in camera*. The Court agrees with Wellshire that the publicly filed third-party complaints and the Court's reference to confidential items only to the extent necessary to resolve pending motions provides the balance that the Court ordered in the prior Opinion. (Docket No. 154 at 8. "The parties are encouraged to propose a less restrictive alternative to the current redactions that would allow the Court to balance the parties' desire for confidentiality of their private agreement with the right of the public to access judicial proceedings and records.") Accordingly, SK Food's motion to unseal will granted in part and denied in part, with the specific contents to be unsealed decided as the Court reviews the issues that implicate those sealed documents.

3

assemble, package, and deliver warm breakfast ham sandwiches to Starbucks locations in the western United States and Canada. In 2008, Starbucks hired SK Food and other sandwich assembly companies to use Wellshire ham in making warm and cold ham sandwiches for distribution to Starbucks stores throughout the United States and Canada.

In September 2010, Starbucks started to receive customer complaints about the ham in Starbucks sandwiches. Customers complained that the ham was discolored, had an unusual taste, and appeared spoiled. Starbucks informed Wellshire of the complaints, and in October 2010, Starbucks issued "Stop Sell and Discard" notices for the warm breakfast sandwiches. Starbucks also investigated, discovered quality issues with the ham being provided by Wellshire, and issued a "Corrective Action Plan" to SK Food. Soon thereafter, Starbucks learned for the first time that Hahn, and not Wellshire, was actually producing the ham. Starbucks claims that Wellshire had entered into an agreement with Hahn to satisfy its obligation to provide Black Forest ham for Starbucks sandwiches.

After tests revealed bacteria in the ham sandwiches, on December 23, 2010 Starbucks ordered all sandwich assemblers to stop making sandwiches using Wellshire ham.[3] Starbucks entered

---

[3] As discussed more below, Starbucks' amended complaint refers to Wellshire and Hahn's conduct as it relates to "Ham Sandwiches,"

4

into a settlement agreement with four of the ham sandwich assemblers – but not SK Food - to compensate them for their losses.  In return, the ham sandwich assemblers assigned their rights to Starbucks to bring claims against Wellshire and Hahn for their losses.

In 2011, Wellshire filed suit in the District of New Jersey against SK Food and Hahn regarding the Starbucks ham sandwich issues.  See Civil Action No. 11-1859 (JEI/KMW).  Wellshire claimed that it contracted with Hahn to produce the ham that was provided to three sandwich assembly companies, including SK Food, which prepared the warm breakfast ham sandwiches. Wellshire claimed that SK Food's assembly process, where SK Food would slice the ham, store it, and then assemble it with eggs, cheese and rolls it supplied, caused the sandwiches to be contaminated with listeria monocytongenes, rather than from the ham itself.  SK Food denied Wellshire's claims, and filed a counterclaim against Wellshire and a third party complaint

---

which term Starbucks defines as "both the warm breakfast ham sandwiches and the chilled lunch ham sandwiches."  (Amend. Compl. ¶ 12.) Starbucks' allegations in the complaint thereafter refer to Wellshire and Hahn's alleged liability for the collective ham sandwiches.  The parties' briefing shows that Wellshire, Hahn and SK Food's involvement with the ham sandwich problems depends on what type of sandwich was assembled and what type of ham was used in that particular sandwich.  Relatedly, Starbucks has not asserted any claims against SK Food in this case, but the briefing suggests that they have resolved the claims between them.

against Hahn. The parties settled the case in September 2012 pursuant to a confidential settlement agreement.

In this case, Starbucks has asserted claims against Wellshire for breach of the implied warranty of merchantability and breach of the implied warranty of fitness for particular purpose, negligent misrepresentation, and unfair and deceptive trade practices. Starbucks has also asserted claims against both Wellshire and Hahn for breach of the ham sandwich assembler agreements and Starbucks' third-party beneficiary rights, as well as a claim for negligence. Wellshire and Hahn have filed third-party complaints against SK Food that both assert two counts. The first count is for defense and indemnification, claiming that the settlement of the 2011 case contained an indemnification provision in which SK Food agreed to assume all liability for claims asserted against Wellshire and Hahn by Starbucks resulting from the ham sold to SK Food by Wellshire and Hahn.[4] The second count is a claim for SK Food's breach of the duty of good faith and fair dealing it owed to Wellshire and Hahn.

SK Food has moved to dismiss the third-party complaints, arguing that the indemnification provision is not triggered by

---

[4] This count had been redacted from Wellshire's and Hahn's third-party complaints. Their complaints are now filed in unredacted form. (Docket Nos. 171, 172.)

Starbucks' suit against Wellshire and Hahn. SK Food argues that the indemnification provision only requires SK Food to indemnify Wellshire and Hahn for SK Food's own conduct, and it does not require SK Food to indemnify Wellshire and Hahn for Wellshire's or Hahn's conduct. SK Food argues that because Starbucks' claims against Wellshire and Hahn relate only to their own independent acts, the indemnification provision is inapplicable. In contrast, Wellshire and Hahn argue that the plain language of the indemnification provision is broad and all-encompassing and cannot be read as narrowly as SK Food maintains. Moreover, Wellshire and Hahn argue that Starbucks' complaint asserts claims against them that implicate SK Food's conduct, as well as SK Food's obligation to indemnify them.

The law respecting contractual indemnification for an indemnitee's own negligence is governed by the principles set forth in Azurak v. Corporate Prop. Investors, 814 A.2d 600 (N.J. 2003) and Mantilla v. NC Mall Assocs., 770 A.2d 1144 (N.J. 2001), reaffirming certain principles earlier set forth in Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 510 A.2d 1152 (N.J. 1986). Englert v. The Home Depot, 911 A.2d 72, 77 (N.J. Super. Ct. App. Div. 2006). In Ramos, the Court stated:

> Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. Thus, a contract will not be construed to indemnify the

7

>indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.

Englert, 911 A.2d at 77 (quoting Ramos, 510 A.2d 1152 at 1159 (internal citations omitted).

SK Food argues that the indemnification provision in the settlement agreement only indemnifies Wellshire and Hahn for SK Food's conduct as it relates to warm breakfast sandwiches, and not for Wellshire's and Hahn's conduct, because the indemnification provision does not state in "unequivocal terms" that it would indemnify Wellshire and Hahn for their conduct in any regard, but especially for conduct not related to warm breakfast sandwiches.  Wellshire views the indemnification provision to require SK Food to indemnify Wellshire if it is found vicariously liable to Starbucks, but not if Wellshire is found to be directly liable to Starbucks.  Hahn views the indemnification provision to require SK Food to indemnify Hahn for any of its vicarious or direct liability to Starbucks.

In order to determine whether the indemnification provision bars Wellshire's and Hahn's third-party complaints at this motion to dismiss stage, the Court is limited to considering the text of the indemnification provision,[5] Wellshire's and Hahn's

---

[5] The indemnification provision provides,

>SK agrees and covenants to defend, indemnify and hold harmless Wellshire and Hahn against all loss, including attorney's fees, arising

8

third-party complaints, and Starbucks' amended complaint. The Court cannot ignore, however, representations made in the parties' briefs which caution against a myopic consideration of SK Food's motion.

First, Wellshire argues that SK Food is responsible for the presence of listeria in the sandwiches it assembled due to SK Food's mishandling of the ingredients, including the ham. Wellshire argues that this is evidenced by the fact that no other sandwich assemblers' sandwiches contained the so-called "tainted" ham, and Wellshire, through Hahn, distributed the same ham to all the assemblers.[6] Wellshire suggests in its brief that Starbucks and SK Food have colluded in some way to place the blame on Wellshire and Hahn for Starbucks' losses over the

---

> directly or indirectly from any and every claim or demand of any kind and character, including claims for contribution and indemnification, that may be asserted by Starbucks claiming that the Ham sold to SK, and the Sandwiches thereafter purchased by Starbucks, was off-color, off-taste or contaminated with *listeria monocytogenes*. In the event that any claims are asserted by Starbucks as an assignee of Giorgio's or which arise out of ham sold to Giorgio's, SK's obligations to defend, indemnify and hold harmless set forth in this paragraph shall not apply.

[6] The parties agree that two different types of ham were manufactured for the breakfast sandwiches and the lunch sandwiches. Hahn only produced ham for the breakfast sandwiches. Wellshire obtained the ham for the lunch sandwiches from another meat processor.

9

cancelled ham sandwich program, which is demonstrated by Starbucks' intentional decision not to file suit against SK Food for its conduct, and Starbucks' settlement with sandwich assemblers whose sandwiches never had any problems.

Second, and in complete contrast to Wellshire's position, SK Food argues that Starbucks' claims against Wellshire and Hahn arise out of sandwiches that SK Food did not assemble.[7] SK Food therefore argues that the indemnification provision cannot be triggered under its interpretation because it cannot indemnify Wellshire and Hahn for claims related to ham sandwiches that it took no part in assembling.

The parties have asked the Court to interpret the scope of an indemnification provision in the context of a motion to dismiss third-party complaints, but they have buttressed their arguments for and against dismissal with purported facts which, if considered, could alter the Court's analysis and potentially change the result. This is particularly illustrated by Starbucks' allegations in its complaint that refer collectively to the "ham sandwiches" and the "defendants'" culpability, when it is apparent that the specific type of sandwich, sandwich

---

[7] Hahn apparently agrees with SK Food's position that it did not assemble the sandwiches that are the basis for Starbucks' claims against Wellshire and Hahn, but Hahn nonetheless argues that SK Food agreed to indemnify Hahn for Hahn's conduct related to the ham sandwich contamination.

10

assembler, and ham producer is relevant to the interpretation and application of the indemnification provision. Without considering what the facts show, and instead relying solely upon the pleadings, if the Court were to view the indemnification provision broadly, SK Food could be held liable for Wellshire's and Hahn's conduct related to ham sandwiches that SK Food did not assemble. Or, SK Food could be allowed to improperly escape any liability for its own conduct, if the indemnification provision is read narrowly.

Related to the problems of assessing the scope of the indemnification provision in the context of a motion to dismiss is that the Court's decision could result in an impermissible advisory opinion. Even though Wellshire contends that the Court will be required to interpret the indemnification provision whether or not Starbucks prevails on its claims,[8] it is not certain at this point that the indemnification provision ultimately will be dispositive of the parties' obligations to

---

[8] Wellshire contends that if Starbucks is unsuccessful in its claims against it, Wellshire will nonetheless seek to recover the significant amount of attorneys' fees and expenses incurred in successfully defending against Starbucks' claim from SK Food based on the indemnification provision. If Starbucks obtains a judgment against Wellshire, Wellshire will seek to recover the amount of such judgment as well as its fees. The Court agrees with Wellshire that duplicitous litigation would be required should the third-party complaints be dismissed now. The after-the-fact approach, as discussed herein, balances all the competing interests.

one another. See, e.g., Badia v. Homedelivery Link, Inc., No. 2:12-CV-06920 WJM, 2014 WL 3619796, at *3 (D.N.J. July 22, 2014) (reserving decision on the interpretation of an indemnification provision so that it would not become an advisory opinion); Fujarski v. L.F. Driscoll Co., 2011 WL 1983353, at *2 (D.N.J. May 19, 2011) (same).

In this situation, the "after-the-fact" approach articulated by the New Jersey courts, and cited by all parties in their briefs, makes sense. That approach was devised in the context of determining whether an indemnitee could recover counsel fees "so long as the indemnitee is free from active wrongdoing regarding the injury to the plaintiff and has tendered the defense to the indemnitor at the start of the litigation." Cent. Motor Parts Corp. v. E.I. duPont deNemours & Co., 596 A.2d 759, 762 (N.J. Super. Ct. App. Div. 1991) (citations omitted). "Allegations in the pleadings may be a starting point to determine whether counsel fees and costs are recoverable by [an indemnitee], but the actual facts developed during trial should control." Id. (citations omitted). It is only after the indemnitee has defended against alleged charges of its independent fault, that it can be determined what costs the indemnitor is liable for. Id. (citations omitted). The same approach makes sense in this case.

At a minimum, upon review of Starbucks' complaint, the

12

third-party complaints, and the indemnification provision, the Court finds that Wellshire's and Hahn's third-party complaints regarding their demand for indemnification from SK Food meet the Federal Civil Procedure Rule 8 and Twombly/Iqbal pleading standards for asserting claims against SK Food. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").[9] Accordingly, the third-party complaints will not be dismissed.

## CONCLUSION

Judge Learned Hand observed in Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.), aff'd, 326 U.S. 404 (1945), that "a mature and developed jurisprudence" does not "make a fortress out of the dictionary" in engaging in the interpretation of written

---

[9] SK Food argues that Wellshire's and Hahn's claims that SK Food breached the covenant of good faith and fair dealing based on SK Food's alleged breach of the confidentiality provision in their settlement agreement must be arbitrated pursuant to the settlement agreement with SK Food. Wellshire and Hahn shall be directed to show cause as to whether they have asserted such a claim, and if so, whether it must be arbitrated under the settlement agreement.

documents.  "In the final analysis, a court must look for the parties' true intent . . . ."  <u>Sayles v. G & G Hotels, Inc.</u>, 57 A.3d 1129, 1134-35 (N.J. Super. Ct. App. Div. 2013) (adding that "our jurisprudence [also] does not make a fortress out of The Elements of Style").  At this stage of the case, the Court cannot determine the parties' true intent with regard to the indemnification provision.  The third-party complaints may proceed through discovery so that the parties may demonstrate their intent with evidence that may be properly considered by the Court.

    An appropriate Order consistent with this Opinion will be entered.


Date:  <u>March 4, 2016</u>       <u>s/ Noel L. Hillman</u>
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.